The PEOPLE of the State of
Colorado, Petitioner

v.

Darold JORLANTIN, Respondent.

No. 07SC875.

Supreme Court of Colorado,
En Banc.

Nov. 10, 2008.

As Modified on Denial of Rehearing
Dec. 2, 2008.

---

Carol A. Chambers, District Attorney, Eighteenth Judicial District, Andrew Cooper, Senior Deputy District Attorney, Centennial, Colorado, Attorneys for Petitioner.

Douglas K. Wilson, Colorado State Public Defender, Jessica Schmidt, Deputy State Public Defender, Centennial, Colorado, Attorneys for Respondent.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

In this appeal, we review the district court's affirmance of the county court's grant of the defendant's motion suppressing testimony of the arresting officer's observations at the time of the stop and arrest of the defendant in a driving under the influence case.[1] We reverse. Absent evidence to the contrary, we hold that when a defendant files a motion to suppress claiming that his Fourth Amendment rights were violated, this initial allegation suffices to establish that he was the victim or aggrieved party of the alleged invasion of privacy. Hence, the pros-

---

1. The prosecution filed an interlocutory appeal of the county court's suppression order to the district court pursuant to Crim. P. 37.1. After the district court issued its holding, the prosecutor petitioned under C.A.R. 53(a) for a writ of certiorari.

ecution does not have the burden of going forward at the suppression hearing to prove that the defendant was the one seized or arrested.[2] We remand this case to the district court to return it to the trial court for proceedings consistent with this opinion.

## II. Facts and Proceedings Below

The defendant, Darold Jorlantin, was charged with driving under the influence, section 42–4–1301(1)(a), C.R.S. (2008), and driving with excessive alcoholic content, section 42–4–1301(2)(a), C.R.S. (2008). In a pretrial motion, the defendant sought to suppress evidence of the arresting officer's observations of his indicia of intoxication made during the time the officer was in contact with him, and to exclude evidence of any statements made by him during this interval. As grounds for this motion, he alleged that the officer lacked reasonable suspicion for the stop of the van and lacked probable cause to arrest him in violation of the Fourth Amendment.

At the suppression hearing, the arresting officer testified that he received a report of a possible gang fight at a gas station. Once there, several people pointed to a van departing the gas station parking lot and said individuals inside the van wanted to fight. The officer went to the van, observed the driver and multiple passengers inside, and directed the driver to stop. The officer smelled the odor of an alcoholic beverage emanating from the driver's side of the van, and he saw a nearly empty bottle of brandy on the floor of the driver's side of the van. The driver's eyes were bloodshot and watery. The driver stated that he had consumed "a little bit" of alcohol. Thereafter, the driver failed to perform satisfactorily on roadside sobriety tests.

In his testimony, the officer did not expressly identify the defendant in the courtroom as the driver of the van. However, in her questions at the hearing, the prosecutor at times referred to the defendant as the driver. No evidence was introduced that the defendant was a passenger, and not the driver, of the van.

The trial court ruled that the officer had reasonable suspicion to stop the van and to investigate allegations of disorderly conduct or assault. The court ruled that under these circumstances, the officer possessed adequate facts to conduct an investigation as to whether the driver was under the influence of alcohol. The court ruled that the officer acted out of concern for his safety when he ordered the driver and the other occupants out of the van.

Under these circumstances, the trial court concluded there was probable cause to arrest the driver of the van for the misdemeanor offense of driving under the influence of alcohol. However, the court held that probable cause to arrest the defendant did not exist because the officer failed to identify the defendant in court as the driver of the van and the person arrested. The court stated that there were multiple people in the van and reasoned that because there was insufficient evidence to identify the defendant as the driver at the suppression hearing, the arresting officer lacked probable cause to arrest the defendant, and therefore the arrest violated the Fourth Amendment. Thus, the trial court granted the defendant's motion to suppress evidence.

The prosecution appealed this decision to the district court, and the district court upheld the county court's order suppressing evidence on the same grounds. The prosecution sought certiorari review of the district court's decision. We granted certiorari and we now reverse.

## III. Analysis

The United States Constitution protects individuals against unreasonable law enforcement searches and seizures. U.S. Const. amends. IV, XIV. Such protections apply only when police contact "impermissibly intrudes upon an individual's personal security or privacy." *People v. Melton,* 910 P.2d 672, 676 (Colo.1996); *see also Outlaw v. People,* 17 P.3d 150, 154 (Colo.2001). A motion to suppress evidence based on Fourth

2. The question for which this court granted certiorari review is: "Whether the trial court properly granted Defendant's motion to suppress evidence when the trial court did not find that the evidence sought to be suppressed by Defendant was obtained as a result of police misconduct."

Amendment grounds focuses on the legality of the police-citizen contact that occurs before a case against an individual goes to court. *See People v. Henry*, 631 P.2d 1122, 1129 (Colo.1981) ("Before a defendant is entitled to an order of suppression, he first must establish that the challenged search violated a privacy interest which the Fourth Amendment is designed to protect.").

The mere fact that illegally-obtained evidence will be introduced against a defendant at trial does not give that defendant an automatic right to bring a suppression motion. *Rakas v. Illinois*, 439 U.S. 128, 134–35, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Fourth Amendment protections against unreasonable searches and seizures are "personal and cannot be vicariously asserted." *People v. Juarez*, 770 P.2d 1286, 1288 (Colo. 1989). Accordingly, a defendant must show that he was the victim of a particular Fourth Amendment violation in order to obtain the remedy of suppression. *Rakas*, 439 U.S. at 132, 99 S.Ct. 421 (requiring that "the person seeking to challenge the legality of a search ... was himself the 'victim' of the search or seizure") (internal citation omitted); *see also* Crim. P. 41(e) (only persons "aggrieved" by an unlawful search or seizure can bring a suppression motion).

To suppress evidence successfully, a defendant must establish standing by showing *his* Fourth Amendment rights were violated. *People v. Suttles*, 685 P.2d 183, 189–90 (Colo.1984) (citations omitted). Absent standing, a defendant cannot "claim the protection of the Fourth Amendment," *People v. Galvadon*, 103 P.3d 923, 925 (Colo.2005), and is therefore unable to suppress evidence based on an illegal search, seizure, or arrest. *Juarez*, 770 P.2d at 1288–89 ("Before a defendant can challenge the constitutionality of a governmental search, he must establish that he has standing....").

When the driver of a car is stopped and arrested for driving under the influence, his personal Fourth Amendment rights are implicated. *Cf. People v. Rodriguez*, 945 P.2d 1351, 1359–60 (Colo.1997) (ruling on a defendant-driver's motion to suppress evidence stemming from the stop of his vehicle based on an officer's suspicion that he was driving under the influence and violated traffic laws by weaving in traffic). Evidence collected during and after the stop, including the observations of the officer, will be suppressed if the stop of the driver was not supported by a "reasonable suspicion of criminal activity." *Id.* Moreover, even if there is a constitutionally permissible basis for the stop, and the driver is arrested, then the arrest must be based on probable cause to justify the officer's belief that an offense has been or is being committed by the person arrested. *See People v. King*, 16 P.3d 807, 813 (Colo.2001). Absent consent, evidence stemming from the arrest will be suppressed if the arrest is not supported by probable cause. *See id.*

In contrast, if the defendant were not the driver, then the Fourth Amendment will not provide protection, even if the stop and seizure of the driver was not constitutionally permissible. *See People v. Henry*, 631 P.2d 1122, 1129 (Colo.1981). Mere occupancy in a vehicle does not give a defendant-passenger "a constitutionally cognizable expectation of privacy" in the seizure of the driver. *See id.; see also* Wayne R. La Fave, *Search & Seizure: A Treatise on the Fourth Amendment* § 11.3, at 129 (4th ed.2004) ("As for seizure of a *person*, it is clear that one person lacks standing to object to the seizure of another ....") (emphasis in original).[3]

## IV. Application

With these basic principles of Fourth Amendment protections and standing in mind, we examine the issue posed in this

---

3. The United States Supreme Court recently held that a passenger in a vehicle was "seized" for Fourth Amendment purposes when that vehicle was stopped by the police, and the passenger therefore had standing to challenge the constitutionality of the stop. *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Here, however, the evidence sought to be suppressed was seized from the driver, not from a passenger. Specifically, this evidence included observations by the officer that the driver exhibited "indicia of intoxication" and the driver's statement that he had "a little bit" to drink. The passenger cannot challenge the seizure of the driver to exclude evidence obtained from the driver. *See* LaFave, § 11.3, at 129.

case: whether an officer must identify the defendant in court as the driver of the vehicle stopped to establish that the stop and subsequent arrest of the driver satisfied Fourth Amendment standards.

Our research discloses no Colorado precedent on point. Two cases in other jurisdictions hold that, at a suppression hearing, the prosecution need not make an in-court identification of the defendant. *State v. Maloney*, 708 A.2d 277, 278–79 (Me.1998) (in a driving under the influence case, the prosecution was not required to identify the defendant in court as the person arrested in order to establish probable cause at a pre-trial suppression hearing); *Allen v. United States*, 580 A.2d 653, 657 (D.C.1990) (holding that an undercover officer was not required to identify the defendant as the person from whom he bought cocaine at a pre-trial suppression hearing). In *Maloney*, the court reasoned that the purpose of a suppression hearing is to determine whether the defendant's constitutional rights were violated during the collection of evidence. *See* 708 A.2d at 278–79. The court reasoned that when a defendant makes a motion to suppress evidence, he "bring[s] himself before the court as the person whose rights were allegedly violated." *Id.* In the *Maloney* defendant's case, because the prosecution did not contest the defendant's standing, the defendant was established as the individual arrested before the hearing even began. *Id.* at 279.

We find the *Maloney* case persuasive in light of our precedent and that of the Supreme Court which require the defendant to show he was a "victim" of an illegal seizure or arrest to receive Fourth Amendment protection. *See Rakas*, 439 U.S. at 132, 99 S.Ct. 421; *Juarez*, 770 P.2d at 1289.

Here, the defendant sought to suppress the officer's observations of the defendant during the stop, statements made by the defendant at that time, and the officer's observations regarding the defendant's performance of roadside maneuvers. When he filed his motion to suppress this evidence, claiming his Fourth Amendment rights had been violated, the defendant alleged that he himself was a "victim of an invasion of privacy." *Jones v. United States*, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).[4] By alleging that he was the "victim" of an illegal seizure as a result of an illegal "stop," he effectively claimed to be the driver, the only person entitled to claim that the seizure by the officer occurred in violation of his Fourth Amendment rights. *See Rakas*, 439 U.S. at 132, 99 S.Ct. 421; *Suttles*, 685 P.2d at 189–90.

Had the evidence revealed he was not the driver, then the defendant would not have had standing to pursue the suppression motion. However, no such evidence was introduced at the suppression hearing. Thus, the defendant's initial allegations contained in his suppression motion sufficed to establish himself as the driver seeking constitutional protection. Procedurally speaking then, the prosecutor bears no burden at the suppression hearing to prove that the defendant was the victim of the claimed illegal police conduct.[5]

The defendant argues that we should not follow the reasoning of *Maloney* because our precedent, *People v. King*, 16 P.3d 807 (Colo. 2001), supports both lower courts' decisions to require in-court identification of the defendant at a suppression hearing seeking to vindicate Fourth Amendment rights. As

---

**4.** We note that in some cases standing is "put in issue" despite the initial allegation contained in the suppression motion. LaFave, § 11.3, at 126. In this scenario, the court resolves the issue of whether the defendant has in fact established Fourth Amendment standing in "view of the totality of circumstances in a particular case." *Tufts*, 717 P.2d at 490. To decide standing, the court determines whether state action infringed upon a Fourth Amendment interest of the defendant. *Galvadon*, 103 P.3d at 925 (examining whether a search of the back room of a liquor store infringed on any of the defendant's "inter-

ests the Fourth Amendment was designed to protect").

**5.** In a warrantless arrest, if standing is not challenged, then the prosecution has the burden to prove the constitutional validity of the stop and subsequent search, seizure, or arrest. *Outlaw v. People*, 17 P.3d 150, 155 (Colo.2001) (noting that where there is a warrantless arrest, the prosecution must prove that the police conduct falls within an exception to the warrant requirement).

part of our review of this argument, we briefly review the *King* holding and discuss its relevance. *King* requires an arresting officer to possess facts justifying a belief that "(1) an offense has been or is being committed (2) by the person arrested." 16 P.3d at 813. In a warrantless arrest situation, the defendant argues that the prosecution must prove in court the identity of the person arrested to satisfy the constitutional standard of probable cause to arrest an individual.

While it is true that *King* requires that a factual nexus exist between the crime and the person arrested, it does not require a nexus between the person arrested and the defendant later at the suppression hearing. *See* 16 P.3d at 813. In the *King* case, we held that even if police observation merited the suspicion that the two defendants had visited the marijuana garden, this suspicion was insufficient to tie either to the crime of marijuana cultivation. *Id.* at 815. Hence, the arrested defendants successfully challenged the lack of nexus between the crime and the persons arrested. *Id.* at 816.

The factual circumstance of this case differs markedly from that of *King.* The defendant points only to the in-court, evidentiary failure of the prosecution to prove that the defendant drove the van and argues that this fact alone constitutes a failure to prove probable cause to arrest. Significantly, the defendant does not challenge the trial court's factual findings that the officer's actions in stopping the van and arresting the driver passed constitutional muster. It is precisely these findings which establish that the evidence sought to be suppressed was in fact legally obtained.

As mentioned, Fourth Amendment analysis at a suppression hearing focuses on the protection of an individual's privacy rights during the citizen-police encounter and the collection of evidence as a result of this encounter. *King's* factual nexus requirement means that the crimes, two drinking and driving offenses, must be connected to the driver who was stopped and arrested that night. The nexus requirement does not mean that the driver must be connected to the defendant by proof of an in-court identification at the pre-trial suppression hearing. The unchallenged factual findings by the trial court in this case establish adequate facts justifying the arresting officer's actions when he stopped the van and arrested the driver. Hence, the officer's observations of the defendant and his recollection of statements made by the driver should not be excluded at trial because of any alleged Fourth Amendment infirmity.

■ In sum, absent evidence to the contrary, we hold that when a defendant files a motion to suppress claiming his Fourth Amendment rights were violated, this initial allegation suffices to establish that he was the victim or aggrieved party of the alleged invasion of privacy. Hence, the prosecution does not have the burden of going forward at the suppression hearing to prove that the defendant was the one seized or arrested.[6]

## V. Conclusion

For the reasons stated, we reverse the county court's order granting the defendant's motion to suppress and remand the case to the district court to return it to the county court for proceedings consistent with this opinion.

---

6. We note that a suppression hearing is neither a trial nor a preliminary hearing. The two misdemeanor offenses charged do not entitle the defendant to a preliminary hearing. *See* § 16–5–301, C.R.S. (2008). At trial, the prosecution will have to prove these charges beyond a reasonable doubt, and this will entail proof that the defendant drove the van that night. Failure to do so will be fatal to the prosecution's case.